UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID J. ELKINS,

      Plaintiff,

v.                                    CASE No. 8:12-CV-2009-T-TGW

FEDERAL AVIATION
ADMINISTRATION, UNKNOWN
AGENCY A, and UNKNOWN
AGENCY B,

      Defendants.

_____

## O R D E R

The plaintiff, David J. Elkins, brought this lawsuit alleging that

defendant Federal Aviation Administration ("FAA") failed properly to

process his requests under the Freedom of Information Act ("FOIA"), 5

U.S.C. 552. The plaintiff also seeks release of information withheld by the

defendant on the basis of the FOIA's exemptions.

The parties have filed cross-motions for summary judgment.

Because the defendant performed an adequate search for responsive records

and properly invoked the FOIA's exemptions to withhold certain records, the

defendant's motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

I.

The plaintiff submitted several FOIA requests to the defendant concerning aircraft he observed flying over Portland, Oregon; Pinellas Park/Lealman, Florida; St. Petersburg, Florida; and the Sarasota-Bradenton International Airport (Doc. 71, pp. 12, 16, 17, 18; see Doc. 46). These requests, which date back to 2005, seek audio recordings between the aircraft and air traffic control towers as well as data the defendant recorded about those flights.

The defendant's official records concerning the day-to-day operations of its air traffic control equipment "are generally kept at the Air Traffic Control facility in which they were generated" (Doc. 71, p. 4). The managers of the air traffic control facilities are the custodians of the official records; custodial duties are assigned to employees responsible for preserving each type of record (id.). The custodians ensure compliance with the defendant's storage and document retention policies, and they respond to requests for the defendant's records (id.).

The defendant has three Air Traffic Service Centers in the United States: the Western Service Center, the Central Service Center, and the Eastern Service Center (id.). These centers "provide support services to the FAA's Directors of Operation, including collection of records responsive to FOIA requests" (id.). The plaintiff's requests were processed by the Western Service Center and the Eastern Service Center (id., pp. 4-5).[1]

The defendant identified records which were responsive to the plaintiff's requests (id., p. 5). However, the defendant alleges that "during its review of the records, it determined that three separate Other Government Agencies ('OGA'), which are federal and municipal law enforcement agencies, would potentially want to withhold or redact some of the records" (id.). Following consultation with the law enforcement agencies, the defendant "withheld in full or partially redacted a number of records pursuant to FOIA Exemptions 6, 7(C) and 7(E)" (id.).

In September 2012, the plaintiff brought this action asserting that the defendant improperly withheld documents responsive to his FOIA

---

[1]FOIA requests received by the Eastern Service Center are designated with "ES," and requests submitted to the Western Service Center are designated with "WS."

requests and failed to make timely determinations on those requests (Doc. 1). Subsequently, with permission from the court (Doc. 45), the plaintiff filed a second amended complaint, which seeks the release of records which are responsive to six separate requests (Doc. 46).

On September 30, 2013, the defendant filed a motion for summary judgment, arguing that it conducted reasonable searches for responsive records and that it properly withheld or redacted some responsive records pursuant to FOIA exemptions 6, 7(C), and 7(E) (Doc. 71). The motion is supported by declarations from Ann Ward, Patricia A. Facey, Paula Watson, and Robbin Holmes (Docs. 71-1, 71-2, 71-3, 71-4, 71-5). The plaintiff filed a response in opposition (Doc. 74), and subsequently submitted a supplemental response (Doc. 75).

Following a hearing on other matters in December 2013, the plaintiff was provided the opportunity to "file further submissions, including a motion for summary judgment, affidavits, and declarations, and ... file a further response to the defendant's motion for summary judgment" (Doc. 88, p. 2). Thereafter, on February 3, 2014, the plaintiff submitted an additional

response and declarations in opposition to the defendant's motion for summary judgment (Doc. 97).

The plaintiff also filed a motion for summary judgment, which is supported by numerous exhibits and a declaration describing the contents of a CD (Docs. 93-96, 110).[2] In a separate motion, which was docketed as a notice, the plaintiff requested that the court hear oral argument on his motion for summary judgment (Doc. 98), and that request is hereby denied. The defendant filed a response in opposition to the plaintiff's motion for summary judgment on February 20, 2014 (Doc. 104).

As indicated, this lawsuit involves six of the plaintiff's FOIA requests. These requests have the following control numbers: 2010-008393ES, 2011-006360WS, 2011-008400ES, 2011-008402ES, 2011-008403ES, and 2013-002230ES.

---

[2] The plaintiff sought permission to file a CD in support of his motion for summary judgment (Doc. 92), and that request was originally granted (Doc. 99). However, the plaintiff subsequently informed the Clerk that viewing of the CD would only be free for a 30-day period, after which time a charge would be incurred (Doc. 100). Thereafter, the Clerk was directed to return the CD to the plaintiff (Doc. 101). The plaintiff's motions to file an amended CD (Docs. 102, 108) were denied, but the plaintiff was given permission to file an affidavit or declaration under oath describing the contends of the CD (Doc. 109).

A. Request 2010-008393ES

On September 15, 2010, the plaintiff requested "records concerning [an] aircraft circling on September 14, 2010 at 4:45 pm north of and in the 40/SFC area N/NW of the Sarasota-Bradenton International Airport, over Tamiami Trail (Hwy 41 or 14th Street) in Bradenton, Florida ..." (Doc. 71-12, p. 4). Specifically, the plaintiff sought: (1) records confirming the N-number of the aircraft as 852LR; (2) records confirming the law enforcement agency which operated the aircraft; (3) the radio call sign; (4) the radar plot; (5) in-flight radio communications with air traffic control towers; (6) a pre-flight plan filed on or before September 14, 2010; and (7) a letter acknowledging his request (id.).[3] The request was assigned control number 2010-008393ES.

Watson, a Freedom of Information Act Specialist, contacted the Tampa Airport Traffic Control Tower/Terminal Radar Approach Control ("ATCT/TRACON") and Sarasota Airport Traffic Control Tower ("ATCT") to obtain records responsive to request 2010-008393ES (Doc. 71-3, ¶9). On September 24, 2010, Tampa ATCT/TRACON sent Watson a voice

_____

[3]An N-number is an aircraft's registration number (Doc. 71, p. 13 n.6).

transmission and radar data (id.). Sarasota ATCT did not have any responsive documents (id., p. 4 n.1).[4]

Thereafter, Watson provided the aircraft registration number to the defendant's Security and Hazardous Materials Safety Division, which determined that the plaintiff was previously the subject of a federal investigation (id., ¶10). Watson then concluded that "the records [requested by the plaintiff] contained information that may be of interest to one Other Government Agency ('OGA'), a Federal law enforcement agency" (id.).

Following discussions with the defendant's FOIA and Litigation Support Group, Watson consulted with the law enforcement agency about the disclosure of the records (id., ¶¶10, 11). The law enforcement agency requested that the defendant withhold all of the records under exemption 7(A) (id., ¶11).

The defendant denied the plaintiff's request on October 13, 2010 (Doc. 71-3, ¶12; Doc. 71-12, p. 2). In doing so, the defendant informed the plaintiff that "the [requested] information was part of an ongoing

---

[4]All references to the record correspond to the docket and page numbers assigned by CM/ECF.

investigation by the Drug Enforcement Administration (DEA)" (Doc. 71-12,

p. 2).

The plaintiff appealed the denial of his request in November

2010 (Doc. 71-3, ¶12).   Watson states that she consulted with the law

enforcement agency following the appeal, and the agency again requested that

the records be withheld pursuant to exemption 7(A) (id.).   Accordingly, in

June 2011, the defendant upheld its prior decision (id.).

In a letter dated September 26, 2013, the defendant further

responded to the plaintiff's request (Doc. 71-12).   The defendant explained

(id., pp. 2-3):

> The investigation has been completed, and a
> records search was conducted at Sarasota Airport
> Traffic Control Tower (ATCT) and Tampa
> ATCT/Terminal Radar Approach Control.
> Sarasota ATCT had no contact with the subject
> aircraft; therefore, there are no records. Tampa
> ATCT/TRACON provided compact discs
> containing audio communication and radar plot
> data.   We have determined these records are
> exempt from disclosure under FOIA Exemptions 6,
> 7(C) and 7(E).
>
> ...

> The audio communication falls within Exemptions 6, 7(C) and 7(E), and the radar plot data falls within Exemption 7(E). Therefore, your requests for records confirming the N number and records of the radio call sign are being denied. A copy of the letter of acknowledgment previously provided to you (via certified mail-return receipt on September 10, 2010 and via fax on October 6, 2010) is enclosed for your convenience.
>
> If a flight plan was filed, it would have been filed with the St. Petersburg Flight Service Station which is under contract to the Lockheed Martin Corporation. Lockheed Martin Corporation is a non-government entity under contract to the FAA, and they are not obligated to provide records pursuant to the FOIA program.

The defendant also provided the plaintiff with contact information for Lockheed Martin Corporation, and advised him of his right to request reconsideration of the decision (id., p. 3).

### B. Request 2011-006360WS

In 2011, the Western Service Center received a request from the plaintiff for "'all records previously denied to [him] by the Federal Aviation Administration, Renton, Washington office ...'" (Doc. 96-6, p. 2).[5] Ward, a

_____

[5]Between March 20, 2005, and March 12, 2008, the plaintiff sent several FOIA requests to the defendant regarding aircraft he observed in Portland, Oregon (Doc. 71, p. 12). The plaintiff sought radar plots, in-flight communications, radio telephony, call signs,

Management and Program Analyst, determined that this request, which was

assigned control number 2011-006360WS, sought records that were

---

transponder squawk codes, aircraft registration numbers (N-numbers), the identity of the law enforcement agencies operating the aircraft, and all records related to those requests (id., pp. 12-13).

The defendant withheld certain records responsive to these requests, and the plaintiff brought a lawsuit against the defendant in the United States District Court for the District of Oregon (Elkins v. Federal Aviation Administration, Case No. 3:08-CV-1073-PK (D. Or.)). The parties subsequently filed cross-motions for summary judgment. In his Findings and Recommendation, United States Magistrate Judge Paul Papak noted that the plaintiff had agreed to withdraw requests 2007-004334WS, 2007-005962WS, 2008-001675WS, 2007-005988WS, and 2007-007902WS, and the plaintiff's claim for relief with respect to those requests was moot (Doc. 71-9, pp. 8-9). He further explained (id., p. 11) (internal citations omitted):

> Here, the FAA has provided a detailed description of the information it has withheld and has alleged facts sufficient to establish that exemption High 2 applies. The FAA has specifically identified that it withheld the identification of the aircraft. In addition, with the exception of the voice recording, I can discern from the redactions themselves that the FAA only excluded that information. Moreover, nothing suggests that the FAA could have redacted and released only a portion of the voice recording. Finally, the identity of the aircraft involved in aerial surveillance is law enforcement material, which, if disclosed, would jeopardize the effectiveness of that surveillance. Accordingly, I find that the FAA has properly asserted that exemption High 2 applies.

Magistrate Judge Papak therefore recommended that the district court deny the plaintiff's motion for summary judgment and grant the defendant's motion for summary judgment. On January 4, 2010, United States District Judge Garr M. King adopted the Findings and Recommendation in full (Doc. 71-11).

-10-

contained in the plaintiff's previous requests numbered 2005-002419NM, 2005-004772NM, 2005-005748NM, 2006-00964NM, 2005-001215WS, 2008-003783WS, 2008-004494WS, and 2008-00519WS (71-1, ¶8).[6]

According to Ward, a review of the records revealed that they included "information that may be of interest to two other government offices or agencies" (id., ¶11). In particular, Ward noted that the records contained aircraft call-signs used by specific law enforcement agencies as well as the names of those law enforcement agencies (id.). With assistance from a support specialist with the Portland Tower/TRACON, Ward matched the aircraft call-signs to the law enforcement agencies (id.).

In a July 15, 2011, interim response, the defendant notified the plaintiff that it had identified records responsive to his request, but, due to the volume of records, additional time was needed to process the request and provide a response (Doc. 94-4, p. 2). The defendant also confirmed a telephone conversation wherein the plaintiff agreed to a 30-day extension, and it estimated that the completion date would be August 15, 2011 (id.).

---

[6]The "NM" designation refers to "Northwest Mountain," which was used prior to "WS" (Doc. 71, p. 12 n.5).

-11-

On August 18, 2011, the defendant informed the plaintiff that "some of the records identified [in response to his request] may be of interest to other government offices/agencies" (id., p. 3). In this connection, the defendant explained that, in accordance with 49 C.F.R. 7.16, it "must coordinate with those offices on the disclosure of these records" (id.).

Later that month, Ward corresponded with a federal law enforcement agency about seven pages of documents, one radar plot playback file, and one audio recording, which were previously withheld in connection with request numbers 2006-00964NM and 2008-005159WS (Doc. 71-1, ¶12). These records contain aircraft call-signs, transponder codes, and the name of the law enforcement agency (id.).

Ward also contacted the second government agency, a municipal law enforcement agency, about the potential disclosure of documents responsive to previously denied request numbers 2005-002419NM, 2005-004772NM, 2005-005748NM, 2005-001215WS, 2008-003783WS, and 2008-004494WS (id., ¶14). The records included 58 pages of documents, a radar plot playback file, and 2 audio recordings (id.). Ward's review of these

-12-

materials revealed that they contained aircraft call-signs, transponder codes, and the name of the law enforcement agency (id.).

On September 23, 2011, Ward communicated with the municipal law enforcement agency by telephone (id., ¶15). The discussion, which covered identification of the records to be withheld, the reason for the withholding, and applicable FOIA exemptions, was summarized by Ward in an email and later confirmed by the agency (id., ¶¶15, 16). Ward states that the defendant "withheld in full the audio recording and redacted in part the 58 pages of material and the radar plot playback file under FOIA Exemption 7(E)," based on these communications (id.).

The defendant sent additional interim responses to the plaintiff in October 2011, November 2011, May 2012, and September 2012 (Doc. 94-4, pp. 3, 4, 5, 6). The notices indicated that the responsive records were still being reviewed.

On January 23, 2013, the federal law enforcement agency requested that the defendant withhold the audio recording under exemptions 6, 7(C), and 7(E) (Doc. 71-1, ¶13). The agency also asked the defendant to withhold 5 pages of documents in full and 2 pages in part under exemption

7(E) (id.). Although not addressed by the agency, the defendant withheld the radar plot playback file under exemption 7(E) (id.).

In June 2013, the defendant notified the plaintiff of its partial denial of request 2011-006360WS (Doc. 96-6, pp. 2-4). Specifically, the defendant said (id., p. 2):

> The ATO, Western Service Center was assigned to review records previously denied under FOIAs 2005-002419NM, 2005-004772NM, 2005-005748NM, 2005-001215WS, 2008-003783WS, and 2008-004494WS, and has identified 58 pages of documents and one radar plot playback file that are responsive to your request and releasable. A copy of this material is enclosed. Please note that certain information has been redacted for the reason stated in the following paragraph.
>
> Two voice re-recordings have also been identified as within the scope of your request; however, these recordings and the information redacted from the above-mentioned records have been withheld from disclosure pursuant to Exemption 7(E) of the FOIA, Title 5 U.S.C., Section 552(b)(7)(E). Exemption 7(E) affords protection to all law enforcement information which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. We have determined that the disclosure of this

-14-

information could reduce or nullify the effectiveness of these techniques, procedures and guidelines.

The defendant advised the plaintiff of his right to seek reconsideration of this determination by submitting a written request to the defendant within 30 days of receiving the denial letter (id., pp. 2-3).

With regard to requests 2006-00964NM and 2008-005159WS, the defendant explained (id., p. 3) (emphasis in original):

> The ATO, Western Service Center has also been assigned to review records previously denied under FOIAs 2006-00964NM and 2008-005159WS, and has identified two pages of documents that are responsive to your request and releasable. A copy of this material is enclosed. Please note that certain information has been redacted for the reason stated in the following paragraph.
>
> Radar plots, radar track data, and voice communications have also been identified as within the scope of your request; however, these records and the information redacted from the above-mentioned records have been withheld from disclosure pursuant to Exemption 7(E) of the FOIA. *See explanation above.*
>
> Furthermore, the voice communications have also been withheld from disclosure pursuant to Exemption 6 of the FOIA, Title 5 U.S.C., Section 552(b)(6). Exemption 6 protects personally

-15-

identifiable information which, if released, would cause a clearly unwarrranted invasion of personal privacy. Based upon a review of the material, it has been determined that the personal privacy interests involved outweigh any public interest in the release of this information.

The voice communications are also being withheld under Exemption 7(C) of the FOIA, Title 5 U.S.C., Section 552(b)(7)(C). Exemption 7(C) provides protection for personal information in law enforcement records, the disclosure of which could reasonably be expected to constitute an[] unwarranted invasion of personal privacy. Based upon a review of the material, it has been determined that the release of the information would not serve an identified public interest and will be withheld.

The defendant further said that any appeals of the partial denial of requests 2006-00964NM and 2008-005159WS should be sent to the Department of Justice's Office of Information Policy (id.).

C. Requests 2011-008400ES, 2011-008402ES, and 2011-008403ES

In August 2011, the Eastern Service Center received three FOIA requests from the plaintiff (Doc. 71-2, ¶8). These requests, which were assigned numbers 2011-008400ES, 2011-008402ES, and 2011-008403ES, sought "various records pertaining to aircraft described in all three requests

as a high wing type Cessna" (id.). Request 2011-008400ES concerned an aircraft flying over St. Petersburg, Florida on August 8, 2011; requests 2011-008402ES and 2011-008403ES related to aircraft circling over Pinellas Park/Lealman, Florida on August 1, 2011, and August 4, 2011, respectively (id.).

In processing the plaintiff's requests, Facey, a Management and Program Analyst, asked for records from Tampa ATCT/TRACON (id., ¶9). Tampa ATCT/TRACON provided Facey with copies of voice and radar data records, but indicated there were no responsive documents (id.).

Facey forwarded the materials to the defendant's FOIA and Litigation Support Group "for review and a determination of whether the records may be of interest to any Other Government Agency ("OGA")" (id., ¶10). "It was determined that one OGA, a Federal law enforcement agency, potentially had an interest in the records" (id.).

On August 29, 2011, the defendant sent the plaintiff's requests and the radar and voice data to the law enforcement agency (id., ¶11). Facey states that the defendant contacted the law enforcement agency about the status of the requests on September 29, 2011 (id.).

In October 2011, and June 2012, the defendant informed the plaintiff of the status of his requests (Doc. 94-5, pp. 2, 3). Thus, the defendant explained that it was obligated, pursuant to 49 C.F.R. 7.16, to consult with other government agencies that may have an interest in the release of records, which were "responsive to [the plaintiff's] request," and it was "still waiting to hear back from those agencies" (id.).

The law enforcement agency responded to the defendant on January 23, 2013, requesting that the defendant withhold the records under exemptions 6, 7(C), and 7(E) (Doc. 71-2, ¶11). Subsequently, on June 21, 2013, the defendant denied the plaintiff's requests (id.; Doc. 96-7, pp. 2-3). The denial letter stated, in pertinent part (Doc. 96-7, p. 2):

> The records you requested have been withheld from disclosure pursuant to Exemption 6 of the FOIA, Title 5 U.S.C., Section 552(b)(6). Exemption 6 protects personally identifiable information which, if released, would cause a clearly unwarranted invasion of personal privacy. Based upon a review of the material, it has been determined that the personal privacy interests involved outweigh any public interest in the release of this information.
>
> The records you requested have been withheld from disclosure pursuant to Exemption 7(C) of the

FOIA, Title 5 U.S.C., Section 552(b)(7)(C). Exemption 7(C) provides protection for personal information in law enforcement records, the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Based upon a review of the material, it has been determined that the release of the information would not serve an identified public interest and will be withheld.

The records you requested have been withheld from disclosure pursuant to Exemption 7(E) of the FOIA, Title 5 U.S.C., Section 552(b)(7)(E). Exemption 7(E) affords protection to all law enforcement information which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. We have determined that the disclosure of this information could reduce or nullify the effectiveness of these techniques, procedures and guidelines.

The letter also informed the plaintiff of his right to request reconsideration of the decision (id., p. 3).

### D. Request 2013-002230ES

On January 25, 2013, the plaintiff requested records related to an aircraft flying over St. Petersburg, Florida on January 21, 2013 (Doc. 71-5,

p. 7).  Specifically, the plaintiff's request, control number 2013-002230ES, sought all records related to: (1) the N-number of the aircraft; (2) the radio telephony squawk code used during the flight; (3) "in-flight radio communications between Albert Whitted airport control tower instructions for departure of this aircraft and logs of N number and approach at Clearwater/St. Petersburg Airport.   In-flight communications landing instructions and logs"; (4) in-flight communications between the aircraft and Tampa, Miami, or Clearwater/St. Petersburg control towers; (5) the radar flight plot of the aircraft's flight over St. Petersburg, Florida; (6) the entity operating the aircraft; (7) the entity with tactical control over the flight; (8) records of the defendant allowing the aircraft to use multiple N-numbers; and (9) instructions from the operating entity regarding past and present FOIA requests (Doc. 92-1, p. 1).

Thereafter, Holmes, a FOIA Specialist, "requested all responsive records from the Tampa Airport Traffic Control Tower/Terminal Radar Approach Control, which is the FAA facility that generated them" (Doc. 71-5, ¶9).   Tampa ATCT/TRACON provided Holmes with copies of voice transmissions and radar data on February 11, 2013 (id.).

In a letter to the plaintiff dated April 12, 2013, the defendant provided its response to request 2013-002230ES (id., p. 7). The letter said, "[a] records search was conducted at Tampa Airport Traffic Control Tower/Terminal Radar Approach Control. Enclosed is one (1) compact disc containing certified voice re-recordings and radar responsive to your request" (id.). According to Holmes, the defendant "did not withhold any records or information responsive to this request" (id., ¶10).

## II.

Rule 56(a), F.R.Civ.P., provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

Where the party moving for summary judgment has the burden of proof at trial, it must affirmatively show the absence of a genuine issue of

-22-

material fact by presenting credible evidence that would entitle it to a directed verdict if the evidence was not controverted at trial. Id. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437-38. If the movant meets its initial burden, then it is entitled to summary judgment unless the nonmoving party comes forward with "significant, probative evidence demonstrating the existence of a triable issue of fact." Id. at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

## III.

"The purpose of FOIA 'is to encourage public disclosure of information so citizens may understand what their government is doing.'" Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1244 (11th Cir. 2008) (quoting Office of the Capital Collateral Counsel, N. Region

-23-

of Fla. v. Dept. of Justice, 331 F.3d 799, 802 (11th Cir. 2003)). The FOIA

provides that, upon a proper request for records, a government agency "shall

make the records promptly available to any person," 5 U.S.C. 552 (a)(3)(A),

unless those records fall within one of nine enumerated exemptions. 5 U.S.C.

552(b). "If an agency refuses to furnish the requested records, the requester

may file suit in federal court and obtain an injunction 'order[ing] the

production of any agency records improperly withheld.'" Taylor v. Sturgell,

553 U.S. 880, 885 (2008) (quoting 5 U.S.C. 552(a)(4)(B)).

      The defendant has moved for summary judgment, alleging that

it conducted reasonable searches for responsive records and properly withheld

or redacted some responsive records pursuant to FOIA exemptions 6, 7(C),

and 7(E) (Doc. 71). The plaintiff, who also has moved for summary

judgment, challenges both the adequacy of the defendant's searches and the

defendant's reliance on the exemptions to partially or fully withhold certain

records (Doc. 93).

      A. An agency may withhold records requested under the FOIA

if they fall within one of nine exemptions. 5 U.S.C. 552(b). Unlike the

disclosure provisions which are read broadly, the FOIA's exemptions are

construed narrowly. Ely v. F.B.I., 781 F.2d 1487, 1489 (11th Cir. 1986). The burden is on the agency to prove that an exemption has been properly invoked. Miccosukee Tribe of Indians of Fla. v. United States, supra, 516 F.3d at 1258. "[I]n certain cases, affidavits can be sufficient for summary judgment purposes in an FOIA case if they provide as accurate a basis for decision as would sanitized indexing, random or representative sampling, in camera review, or oral testimony." Miscavige v. I.R.S., 2 F.3d 366, 368 (11th Cir. 1993).

As indicated, the defendant asserts that it properly withheld, either in full or in part, certain records responsive to the plaintiff's requests pursuant to exemptions 6, 7(C), and 7(E) (Doc. 71). In this regard, the defendant relies on the declarations of Ward, Watson, and Facey (Docs. 71-1, 71-2, 71-3, 71-4). The plaintiff, on the other hand, argues that the defendant has not satisfied its burden of proving that the exemptions were properly invoked.

Because of the significant number of FOIA requests, the fact that they are designated by non-memorable control numbers, and the overlap of the exemptions, a brief summary of the analysis will aid in following the

discussion.  There are essentially two categories of information at issue: (1) audio recordings, and (2) radar plots and related data.  The audio recordings are exempt under exemption 6, which protects against "a clearly unwarranted invasion of personal privacy," and under exemption 7(C), which allows nondisclosure of law enforcement information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," because the records would permit the identification of law enforcement personnel on the aircraft and there is no countervailing public interest in disclosure of the recordings.  The radar plots and related information, including audio recordings, are protected by exemption 7(E), which authorizes nondisclosure of law enforcement information that would disclose techniques or procedures for investigations since the information would reveal law enforcement tactics for air surveillance.

### 1. Exemption 6

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(6). "Congress' primary purpose in enacting Exemption 6 was to protect individuals from the

injury and embarrassment that can result from the unnecessary disclosure of personal information." U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 599 (1982).

The threshold inquiry for exemption 6 is whether the requested information is contained within personnel, medical, or similar files. News-Press v. U.S. Dept. of Homeland Security, 489 F.3d 1173, 1196 (11th Cir. 2007); Corbett v. Transportation Security Administration, 2014 WL 2503772 at *11 (11th Cir.). The Supreme Court has indicated that "the phrase 'similar files' was to have a broad, rather than a narrow, meaning." U.S. Dept. of State v. Washington Post Co., supra, 456 U.S. at 600. The exemption is not restricted to "a narrow class of files containing only a discrete kind of personal information." Id. at 602. Rather, it includes "detailed Government records on an individual which can be identified as applying to that individual." Id. (citation omitted).

"Once an agency has shown that the information applies to a particular individual, the Court must then strike a 'proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information." Santos v. Drug Enforcement

Agency, 2005 WL 555410 at *2 (D.D.C.) (quoting U.S. Dept. of State v. Washington Post Co., supra, 456 U.S. at 599). "The privacy interest protected by exemption 6 includes an individual's interest in avoiding disclosure of personal matters." Office of the Capital Collateral Counsel, N. Region of Fla. v. Dept. of Justice, supra, 331 F.3d at 802. The public interest, on the other hand, involves opening agency actions to public scrutiny. Id. at 803. "Any peculiar interest of the requesting party is irrelevant to evaluating this general public interest." Id.

The defendant asserts that exemption 6 prohibits the release of "audio recordings between aircraft operated by law enforcement officers during ongoing investigations and various air traffic controllers," which would otherwise be responsive to requests 2010-008393ES, 2011-006360WS, 2011-008400ES, 2011-008402ES, and 2011-008403ES (Doc. 71, p. 8; see Doc. 71-1, ¶20; Doc. 71-2, ¶15; Doc. 71-4, ¶16).[7] In making this argument,

_____

[7]The radar playback file and audio recording responsive to request 2010-008393ES were originally withheld by the defendant pursuant to exemption 7(A) (Doc. 71-4, ¶16), which protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. 552(b)(7)(A). According to Watson, "[t]he OGA originally asked the FAA to withhold the audio recording and radar plot data pursuant to Exemption 7(A) to protect records or information compiled for law enforcement purposes during an ongoing

-28-

the defendant correctly points out that the audio recordings, which "contain identifiable information of the law enforcement officers," fall within the meaning of "similar files" (Doc. 71, p. 8). See Corbett v. Transportation Security Administration, supra.[8]  Therefore, the issue here is whether disclosure of the audio recordings "would constitute a clearly unwarranted invasion of personal privacy."

In the balancing of interests, the agency has the burden of demonstrating that privacy interests justify its decision to withhold records requested under the FOIA. News-Press v. U.S. Dept. of Homeland Security, supra, 489 F.3d at 1191; 5 U.S.C. 552(a)(4)(B).  However, when the information touches on areas defined in an exemption, the requester must show how the disclosure of the withheld information "would serve the core purpose of the FOIA, which is contributing significantly to public

---

investigation involving an aircraft that was on a *bona fide* air interdiction and surveillance mission" (Doc. 71-4, ¶14). That investigation was subsequently completed (Doc. 71-12, p. 2). The defendant now withholds the records under exemptions 6, 7(C), and 7(E).

[8] The plaintiff argues that the defendant improperly withheld records pursuant to exemption 6 because he "did not request records concerning names, addresses, phone numbers, or medical files of any individuals" (Doc. 93, p. 9). The plaintiff misses the point. The issue is not whether he requested that information; rather, it is whether the information responsive to the plaintiff's requests contains personal information.

understanding of the operations or activities of the government." <u>News-Press</u> v. <u>U.S. Dept. of Homeland Security</u>, <u>supra</u>; <u>see</u> <u>Engberg</u> v. <u>U.S. Dept. of Justice</u>, 2011 WL 4502079 at *6 (M.D. Fla.).

The agents whose identifying information and voices are contained on the audio recordings have a substantial privacy interest in avoiding disclosure of their identities. <u>See</u> <u>Davis</u> v. <u>U.S. Dept. of Justice</u>, 968 F.2d 1276, 1281 (D.C. Cir. 1992); <u>Bilderbeek</u> v. <u>U.S. Dept. of Justice</u>, 2010 WL 1049618 at *6 (M.D. Fla.) ("Numerous courts ... have held that the disclosure of information relating to an individual's involvement in law enforcement proceedings constitutes an unwarranted invasion of personal privacy under Exemption 7(C)"); <u>Del Rio</u> v. <u>Miami Field Office of the Federal Bureau of Investigations</u>, 2009 WL 2762698 at *4 (S.D. Fla.) (stating that, in the context of exemption 7(C), the privacy interests of persons whose voices are heard on a recorded tape may be implicated by the tape's disclosure); <u>Lair</u> v. <u>Dept. of Treasury</u>, 2005 WL 645228 at *5 (D.D.C.) ("Law enforcement officers who work on criminal investigations ... have a privacy interest and their identities have traditionally been protected from disclosure

by Exemption 7(C)").[9]  The providing of audio recordings would permit the recordings to be studied in an effort to recognize voices.  For example, the plaintiff could put the records on the internet in order to solicit identifications. Consequently, the disclosure of the audio recordings could subject the agents to harassment and other hostile actions.  Significantly, the defendant has adduced evidence that the plaintiff has previously "chased down, confronted and physically assaulted [by biting] law enforcement officers who used aircraft for surveillance purposes" (Doc. 104, p. 13).

In contrast, the plaintiff has not articulated any meaningful public interest in disclosure of the audio recordings.  He argues that "[s]ince the plaintiff began requesting records through FOIA, the public throughout this country has become greatly aware of illegal activity by law enforcement and other agency's unwarranted surveillance programs by its government on its people" (Doc. 93, p. 18).  The plaintiff has not provided any basis for his speculation that the public has such an interest in the recordings.  Notably, the audio recordings would relate simply to airplane surveillance by law

---

[9]"Exemption 7(C) is similar to, but more protective of privacy, than Exemption 6." Sensor Systems Support, Inc. v. Federal Aviation Administration, 851 F.Supp.2d 321, 333 n.9 (D.N.H. 2012).

enforcement agencies, not surveillance programs in general. Any notion that there is a public interest in that limited type of surveillance due to alleged activity by law enforcement seems baseless and imaginary. While the plaintiff may have an interest in the information, his personal interest is not entitled to any weight for assessing exemption 6.

In short, the disclosure of the audio recordings, which are "similar files" for the purpose of exemption 6, would constitute a clearly unwarranted invasion of personal privacy. Accordingly, the defendant properly withheld this information under exemption 6.

2. Exemption 7(C)

Exemption 7(C) provides that the FOIA does not apply to matters that are "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(7)(C). Although similar to exemption 6, exemption 7(C) "protects from disclosure a broader range of records." Bilderbeek v. U.S. Dept. of Justice, supra, 2010 WL

1049618 at *6.[10]  As with exemption 6, the court must balance the private interest in withholding the information against the public interest in disclosure. Ely v. F.B.I., supra, 781 F.2d at 1490.

The defendant withheld audio recordings on the basis of exemption 7(C), in addition to exemption 6 (Doc. 71-1, ¶20; Doc. 71-2, ¶15; Doc. 71-4, ¶20).  It states that these records "comprise information that is directly related to the activity of the OGAs and their law enforcement officers who were engaged in investigations of potential criminal activity" (Doc. 71, p. 9).

The plaintiff disputes whether the records withheld pursuant to exemption 7(C) were compiled for law enforcement purposes (Doc. 93, p. 3).[11]  In this connection, the plaintiff states that "[t]his circuit cited in Arenberg v. [Drug Enforcement Administration], 849 F.2d 579 (11th Cir.

---

[10]"Exemption 7(C) omits the term 'clearly' as to the invasion of privacy element and encompasses any disclosure that 'could reasonably be expected to constitute' an invasion of privacy rather than 'would constitute' an invasion of privacy." Engberg v. U.S. Dept. of Justice, supra, 2011 WL 4502079 at *7.

[11]The plaintiff asserts that the defendant has failed to establish itself as a law enforcement agency or the lead agency in a prospective investigation (Doc. 93, pp. 2-3, 7-8).  These arguments are off target.  As explained, the records at issue were clearly compiled for law enforcement purposes.

1988) the test threshold requirement, per se, used in <u>Pratt</u> v. <u>Webster</u>, 67[3]

F.2d 408, 420-21 (D.C. Cir. 1982)," and he contends that the defendant "has

failed to satisfy this threshold requirement" (<u>id</u>.).  In <u>Arenberg</u>, the district

court "point[ed] out that other circuit courts are in disagreement, articulating

either a <u>per se</u> test ... or a two-pronged threshold test" to determine whether

records are compiled for law enforcement purposes.   849 F.2d at 580-81

(internal citations omitted).  In this connection, the Eleventh Circuit explained

(<u>id</u>. at 581, <u>citing</u> <u>Pratt</u> v. <u>Webster</u>, <u>supra</u>):

> The D.C. Circuit created a two-prong standard for
> the threshold requirement which is instructive:
>
> First, the agency's investigatory activities that give
> rise to the documents sought must be related to the
> enforcement of federal laws or to the maintenance
> of national security....
>
> Second, the nexus between the investigation and
> one of the agency's law enforcement duties must
> be based on information sufficient to support at
> least "a 'colorable claim'" of its rationality.

As the defendant points out (Doc. 104, p. 3), however, the Eleventh Circuit

did "not distinguish between these two tests or adopt either one"; rather, the

court found the records at issue in that case satisfied the requirement of

-34-

compiled for law enforcement purposes under either test. Arenberg v. Drug

Enforcement Administration, supra, 849 F.2d at 581.

        In all events, the defendant has sufficiently shown that the

withheld records were compiled for law enforcement purposes. The

defendant has explained that the "audio recordings and radar plots in this case

were recorded by the FAA, but the information itself was produced by federal

law enforcement agencies engaged during active investigations under federal

law" (Doc. 104, p. 4). In addition, the defendant submitted declarations

stating that the records withheld on the basis of exemption 7(C) were

prepared by federal law enforcement agencies in conjunction with

"investigations of suspected criminal activity" and "*bona fide* air interdiction

and surveillance missions" (Doc. 71-1, ¶18; Doc. 71-2, ¶13; Doc. 71-4, ¶18).

Accordingly, the audio recordings, which contain communications between

law enforcement agents and air traffic control towers during the federal law

enforcement agencies' investigations, were compiled for law enforcement

purposes. See Sensor Systems Support, Inc. v. Federal Aviation

Administration, supra, 851 F.Supp.2d at 334 (finding that communications

between a Federal Aviation Administration program manager and a special

agent with the Office of the Inspector General "made in the course of an OIG investigation" satisfied exemption 7(C)'s requirement of "compiled for law enforcement purposes").

The plaintiff seems to argue that the defendant waived any right to withhold the records under exemption 7 because the records are publicly available or have been shared with third parties (Doc. 93, pp. 3, 14). In this connection, the plaintiff points to a printout from a law firm website discussing the use of FOIA requests in accident investigations and listings of N-numbers on the defendant's website (id.).

"[T]he government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" Davis v. U.S. Dept. of Justice, supra, 968 F.2d at 1279. However, in challenging a claimed exemption based on prior disclosure, the requester "'must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'" Id. (quoting Afshar v. Dept. of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Specifically, to obtain records "alleged to be in the public

domain, [the requester] has the burden of showing that there is a permanent public record of the exact portions he wishes." Id. at 1280.

Here, the exhibits relied upon by the plaintiff do not evidence a permanent disclosure of the information the plaintiff seeks in this case. Consequently, the plaintiff cannot prevail on his public disclosure argument.

Finally, the plaintiff contends that the defendant's supporting declarations recite inadmissible hearsay, and the declarants lack personal knowledge regarding the information contained in their declarations (Doc. 93, pp. 5-6). While the declarants and the defendant learned from the law enforcement agencies that the records concerned law enforcement investigations, the declarants provided first-hand information about the efforts used to process the plaintiff's requests (including the consultations with the law enforcement agencies), and they described the content of the withheld records (Docs. 71-1, 71-2, 71-3, 71-4). The defendant's declarations are therefore valid. See Van Bilderbeek v. U.S. Dept. of Justice, 416 Fed. Appx. 9, 12-13 (11th Cir. 2011).

Having concluded that the audio recordings were compiled for law enforcement purposes, the next inquiry under exemption 7(C) requires

-37-

the court to weigh the individuals' privacy interests against the public's interest in disclosure.    As previously explained, exemption 7(C)'s requirement that the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy" is less stringent than exemption 6's requirement that the disclosure "would constitute a clearly unwarranted invasion of personal privacy."  In light of the finding that the defendant met the criteria of exemption 6, a fortiori, the audio recordings satisfy the reduced requirements under exemption 7(C).

　　　　3. Exemption 7(E)

　　　　Exemption 7(E) excludes from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law ...."  5 U.S.C. 552(b)(7)(E).  "The threshold for meeting Exemption 7(E) is not high.  Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only

requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Mantilla v. U.S. Dept. of State, 2013 WL 424433 at *6 n.6 (S.D. Fla.) (internal quotation marks and citation omitted).

The defendant has claimed exemption 7(E) as the basis for withholding or redacting information contained in voice and radar data which is responsive to requests 2010-008393ES, 2011-008400ES, 2011-008402ES, and 2011-008403ES. Specifically, the defendant withheld the radar playback file and an audio recording responsive to request 2010-008393ES and the radar data and audio recordings responsive to requests 2011-008400ES, 2011-008402ES, and 2011-008403ES. The declarations of Facey and Watson state that the radar data includes "information about the deployment and use of a particular type of aircraft, aircraft call signs, transponder codes, positions, longitude/latitude, altitude and speed of the aircraft throughout the flights" (Doc. 71-2, ¶17; Doc. 71-4, ¶22). Watson and Facey further aver that the audio recordings were withheld to the extent necessary to protect investigative techniques and procedures (Doc. 71-2, ¶18; Doc. 71-4, ¶23).

-39-

The defendant also withheld records responsive to request 2011-006360WS pursuant to exemption 7(E). In this regard, Ward said (Doc. 71-1, ¶22):

> two (2) graphic radar plots, and three (3) pages of tracking data containing aircraft call signs, transponder codes, position, longitude/latitude, altitude and speed of the aircraft throughout the flights were withheld in full pursuant to Exemption 7(E). An additional two pages of documents containing the aircraft call-sign of the Sensitive Security Aircraft operated by the OGA1 [a federal law enforcement agency], as well as other identifying information part of a law enforcement operation, have been withheld in part. The OGA1 did not address the disclosure of one electronic radar plot playback file. Therefore, the FAA withheld this file in full based on OGA1's request to withhold the other, related radar data. The OGA1 also requested that the FAA assert Exemption 7(E) to protect investigative techniques and procedures used by the OGA1 during the performance of their law enforcement missions that are detailed on the audio recordings.

Ward further stated (id., ¶¶23-24):

> At the request of the OGA2 [a municipal law enforcement agency], 58 pages of records that include memorandums, graphic radar plots with associated tracking data and portions of one (1) electronic radar plot playback file were redacted in part pursuant to Exemption 7(E). The withheld

-40-

information consisted of aircraft call-signs, transponder codes and other identifying information that was part of a law enforcement operation. The OGA2 also asked the FAA to assert Exemption 7(E) to protect investigative techniques and procedures used by the OGA2 during the performance of their law enforcement missions that are detailed on the two audio recordings.

The OGA1 and the OGA2 relied on Exemption 7(E) to protect details about their use of aircraft to detect criminal activity, including information about the deployment and use of a particular type of aircraft, as well as information that would reveal the circumstances under which the OGA1 and the OGA2 utilizes aircraft as part of their detection, investigation and interdiction of criminal activity. Upon review, the OGA1 and the OGA2 concluded that disclosure of this information could compromise the use of the Sensitive Security Aircraft and related techniques and procedures by providing criminal elements detailed information that they could use to develop evasive tactics and countermeasures, thereby allowing them to avoid detection and undermine the future effectiveness of these techniques and procedures in future operations.

To satisfy exemption 7(E), the defendant must first show that the withheld records were compiled for law enforcement purposes. Acosta v. F.B.I., 946 F.Supp.2d 53, 66 (D.D.C. 2013). As explained in the context of

exemption 7(C), the defendant has satisfied this requirement for the records withheld at the request of the federal law enforcement agencies.

In addition to federal law enforcement records, the defendant withheld under exemption 7(E) records at the request of a municipal law enforcement agency. As indicated, Ward explained that the information withheld on behalf of this agency "consisted of aircraft call-signs, transponder codes and other identifying information that was part of a law enforcement operation" (Doc. 71-1, ¶23). Ward also said that the municipal law enforcement agency asked the defendant to withhold records "to protect details about their use of aircraft to detect criminal activity" (id., ¶24). Accordingly, the records withheld on behalf of the municipal law enforcement agency were compiled for law enforcement purposes. See Keys v. U.S. Dept. of Justice, 830 F.2d 337, 342 (D.C. Cir. 1987); Kuffel v. U.S. Bureau of Prisons, 882 F.Supp. 1116, 1124 (D.D.C. 1995).

Exemption 7(E) requires the agency to show that release of the records "would disclose techniques and procedures for law enforcement investigations or prosecutions" which "could reasonably be expected to risk circumvention of the law." 5 U.S.C. 552(b)(7)(E). "While Exemption 7(E)'s

protection is generally limited to techniques or procedures that are not well-known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." Judicial Watch, Inc. v. F.B.I., 2001 WL 35612541 at *8 (D.D.C.). "In justifying the application of Exemption 7(E), the agency may describe the general nature of the technique while withholding the full details." Id. The agency need not, however, "describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld." Id.

According to the defendant, the release of the records withheld pursuant to exemption 7(E) "could compromise the use of the aircraft and related techniques and procedures by providing detailed information that criminals could use to develop evasive tactics and countermeasures, thereby allowing them to avoid detection and undermine the effectiveness of these techniques and procedures in the future" (Doc. 71, p. 11). The defendant, therefore, properly withheld these records under exemption 7(E).

-43-

4. Segregability

The plaintiff challenges the defendant's conclusion that no portion of the audio recordings responsive to requests 2010-008393ES, 2011-006360WS, 2011-008400ES, 2011-008402ES, and 2011-008403ES are segregable (Doc. 93, p. 11).[12]   The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt ...." 5 U.S.C. 552(b).

Contrary to the plaintiff's assertion, the defendant's reasons for withholding the audio recordings (the law enforcement agents' privacy interest in the content and their voices and the protection of law enforcement techniques and procedures that are not normally known) apply to the recordings in full.   Consequently, no portion of the audio recordings is reasonably segregable.

B. The plaintiff raises a number of complaints about the way his FOIA requests were handled.  Those complaints are not persuasive and do not warrant the disclosure of exempt information.

---

[12]The plaintiff makes no argument concerning the segregability of the radar data.

The adequacy of an agency's search for records in response to a FOIA request is judged by a reasonableness standard. Ray v. U.S. Dept. of Justice, 908 F.2d 1549, 1558 (11th Cir. 1990), rev'd on other grounds sub nom. U.S. Dept. of State v. Ray, 502 U.S. 164 (1991). The search need not be exhaustive. Id. Instead, "the agency must show beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents." Id. (citation omitted). This burden may be satisfied through the production of relatively detailed and non-conclusory affidavits, submitted in good faith by responsible officials. Id. "If the government agency meets its burden of proving that its search was reasonable, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith." Id.

The plaintiff challenges the defendant's search for records responsive to request number 2013-002230ES (Doc. 93, pp. 13-14). This contention is meritless.

As detailed by the Holmes declaration, the defendant conducted a search reasonably calculated to uncover the records responsive to request 2013-002230ES. Thus, as indicated, Holmes explained (Doc. 71-5, ¶9):

> I requested all responsive records from the Tampa
> Airport Traffic Control Tower/Terminal Radar
> Approach Control, which is the FAA facility that
> generated them.    The responsive records
> comprised, and the facility provided me with,
> copies of voice transmissions recorded at Tampa
> ATCT/TRACON West Departure position, as well
> as radar data from 1930-2115 UTC on January 21,
> 2013.

Holmes also averred that the defendant "did not withhold any records or

information responsive to this request and produced to plaintiff one radar plot

playback file and the requested voice recordings, electronically, on a

computer disk" (id., ¶10).

The plaintiff asserts that the defendant's search was inadequate

and an act of bad faith because, except for a CD containing in-flight radio

communications, several of the 9 sub-requests under 2013-002230ES "have

gone unanswered" (Doc. 93, pp. 13-14). However, the fact that the defendant

produced only 1 CD in response to 2013-002230ES does not mean that the

defendant's search was inadequate or conducted in bad faith. See Iturralde

v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he

adequacy of a FOIA search is generally determined not by the fruits of the

search, but by the appropriateness of the methods used to carry out the

-46-

search."); Zavala v. Drug Enforcement Administration, 2010 WL 2574068 (D.C. Cir.) ("The adequacy of the search depends on the methods used, not on the records revealed or not revealed.").

To the extent that the plaintiff suggests that there are additional records to be disclosed (Doc. 97-2, p. 1), this assertion is unavailing. There is nothing in Holmes's declaration indicating that the defendant, or any other agency, has additional records related to the multiple requests contained in 2013-002230ES. To the contrary, Holmes expressly said that the defendant produced all of the records responsive to request 2013-002230ES (Doc. 71-5, ¶10).

The plaintiff further complains that the defendant did not provide information "as to what program is used to open the other file 'PPB' file" on the CD (Doc. 93, p. 14). This argument appears moot. Thus, in its response to the plaintiff's motion for summary judgment, the defendant states that it was able to convert the ".ppb" file on the CD to a ".pdf" file, which can be viewed using the Adobe Reader program (Doc. 104, p. 18). Viewed in Adobe Reader, the file has 65,535 pages, and "contains flight data of a number of

different aircraft, both private and commercial, starting on January 21, 2013, at 19:30:00 through 21:15:00, presumably Coordinated Universal Time" (id.).

The plaintiff also argues that the defendant's search for records was inadequate because the defendant "has stated in the past (Ex. 9) that they refer to eighteen data bases in their search for records" (Doc. 93, p. 14). In an August 2, 2007, letter regarding "Multiple FOIA's 2005, 2006, 2007," the defendant said that "[s]everal of [the plaintiff's] FOIA's are voluminous (as many as 18 different data requests in a single FOIA)" (Doc. 94-6, p. 2). However, as the defendant points out, this statement "is not a reference to 18 separate FAA databases. Instead, it is a reference to the fact that plaintiff's FOIA requests often combine multiple sub-requests" (Doc. 104, p. 18).

In sum, the defendant demonstrated that it conducted a search that was reasonably calculated to uncover all records responsive to request 2013-002230ES. The plaintiff has failed to undermine that showing with evidence that the defendant's search for records was unreasonable or conducted in bad faith.

The plaintiff also contends that the defendant failed properly to refer to or consult with the law enforcement agencies, causing an undue delay

in responding to requests 2011-006360WS, 2011-008400ES, 2011-008402ES, and 2011-008403ES (Doc. 93, p. 11). This argument is meritless. In the first place, the defendant was required to, and did, consult with the law enforcement agencies which had an interest in the requested records. See 49 C.F.R. 7.16 (2013).[13]

On the other hand, the defendant did not need to refer the plaintiff's requests to the law enforcement agencies. To the contrary, the regulations state, in pertinent part (49 C.F.R. 7.16(c) (2013)):

> (c) Alternatively, DOT may refer the request (or relevant portion thereof) for decision by a Federal agency that originated or is substantially concerned with the records, but only if that agency is subject to FOIA. Such referrals will be made expeditiously and the requestor notified in writing that a referral has been made.

Thus, the decision to refer a request to another federal agency is left to the discretion of the agency which received the request. To the extent that the defendant withheld records concerning the municipal law enforcement agency's investigations, a referral would have been improper.

---

[13]This regulation was effective until May 27, 2014.

-49-

The plaintiff next complains that the defendant failed to make a determination on his requests within the time required by the FOIA (Doc. 93, p. 12). In this regard, the FOIA provides that (5 U.S.C. 552(a)(6)(A)(i)):

> Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall ... determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination ....

The delay in responding to the plaintiff's requests fails to demonstrate that the defendant acted in bad faith. See Lee v. U.S. Attorney for the S. Dist. of Fla., 289 Fed. Appx. 377, 380-81 (11th Cir. 2008) ("[T]he fact that defendants did not respond to [the plaintiff's] request within 20 days of receipt does not support his claim of bad faith. Defendants explained the reasons for any delays in processing [the plaintiff's] request, and [the plaintiff] presented no evidence rebutting them."). The defendant has explained that it "had no option but to consult with [other] agencies" (Doc. 104, p. 16). Further, the defendant notified the plaintiff of its consultations

with the law enforcement agencies, and it sent the plaintiff interim status updates while waiting for determinations from those agencies (see, e.g., Doc. 94-4, pp. 3, 4, 5; Doc. 94-5, pp. 2, 3).

Finally, citing a FOIA Update entitled "Referral and Consultation Procedures," the plaintiff argues the Department of Justice's regulations require an agency to disclose the names of any agencies with which it consults while processing a FOIA request (Doc. 93, p. 12).[14]  The plaintiff is not correct.  Under the heading of "Referral of Records," the Referral and Consultation Procedures state (Doc. 94-1, p. 3):

> as a matter of sound administrative practice, whenever an agency refers a record to another agency for response, it should advise the requester of this fact and of the identity of the agency to which the referral was made – except in the unusual case in which to do so would itself disclose a sensitive, exempt fact.

With respect to consultations, the Referral and Consultation Procedures merely state that "[a]s with referrals, requesters ordinarily should be advised

------

[14]The plaintiff contends that "FOIA request 2008-005875WS is not a full disclosure as previously claimed by the FAA and is an act of bad faith" (Doc. 93, p. 13).  However, as the defendant correctly notes (Doc. 104, p. 17), the plaintiff has not requested any relief for this FOIA request.

that the agency is consulting with a record's originator whenever this process delays an agency's FOIA response" (id., p. 4).

Importantly, there are exceptions to the standard procedures for making referrals. Thus, the Department of Justice's "Referrals, Consultations, and Coordination: Procedures for Processing Records When Another Agency or Entity has an Interest in Them," explains (Doc. 94-2, p. 3):

> To avoid inadvertently invading an individual's personal privacy or inadvertently revealing protected national security information, the agency in receipt of a request involving unacknowledged law enforcement or national security records that originated with another agency or another component should not automatically follow the standard referral procedures. Instead, the agency in receipt of the request should coordinate with the originating agency before itself making a response to the requester ....

The "Procedures for Making a Consultation" state that "[o]rdinarily, with the same exceptions noted above in the section on coordinating responses, the identity of the entity which is being consulted can be provided to the requester" (Doc. 94-3, p. 2). Here, the exceptions applied.

IV.

For the foregoing reasons, it is

ORDERED:

1. That Defendant's Motion for Summary Judgment (Doc. 71), be and the same is hereby, **GRANTED**, and the complaint is hereby **DISMISSED**.

2. That Plaintiff's Motion for Summary Judgment Pursuant to FRCP 56(c) (Doc. 93), be and the same is hereby, **DENIED**.

3. That the Clerk is hereby **DIRECTED** to enter judgment for defendant Federal Aviation Administration, **DISMISSING** the complaint, and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 22nd day of August, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-53-